IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **VERA BRADLEY DESIGNS, INC,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2550 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| **AIXIN LI, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

The plaintiff has filed a Motion to Compel [Dkt. #55] which claims, essentially, that only one of the defendants has responded to interrogatories – and even then, according to the Motion, evasively – and not one of the defendants has produced a single document. [Dkt. # 59]. Defendants claim to have produced an unspecified number of documents – it is actually not very many at all – stipulated to facts regarding sales figures, and lodged valid objections to other requests. [Dkt. #62, at 5-6]. They also seem to blame plaintiff, indicating that their discovery production hinged on plaintiff's production of 49 documents on January 5, 2021. [Dkt. #62, at 5]. Then, in its Reply, the plaintiff's story changes a bit, although it still claims defendants have produced no more than a handful of documents, perhaps in response to the plaintiff's Motion. [Dkt. #64]. The stories are not just oppositional, they appear to have changed as briefing proceeded. Without an evidentiary hearing or its equivalent, it would be difficult, if not impossible, to determine which rendition of events is more accurate. And that, of course, is not feasible given the extraordinarily large number of cases in which the parties take diametrically opposed factual positions.

We need not recount all the accusations and competing versions of exchanges between counsel that have occurred. One example will illustrate. Both counsel claim they logged into the virtual meeting room for a prearranged conference but that the opponent never showed up. Each has an explanation for what occurred. What is remarkable is how each responded to being "stood up" – or thinking he was. [Dkt. #59 at 5]. Defense counsel sent an email to ask what happened. Plaintiff's counsel claims it was diverted from his email inbox as a "spoof," but he didn't try to contact defense counsel to see what happened. Instead, plaintiff's counsel simply filed this motion to compel a couple of days later. And while each felt aggrieved by what each asserted or perceived occurred, neither called the other to see what had happened. Perhaps that is just an unfortunate sign of the times. But that mutual silence should never have been allowed by either to be the last step in the process demanded by Local Rule 37.2.[1]

In any event, strict compliance with Rule 37.2 is required even when an attempted phone conference was not consummated. That is why the Rule demands a conference: either in person or by phone. *See, e.g., Banister v. Yap*, 334 F.R.D. 176, 179 (N.D. Ill. 2020)("He only sent a few emails to opposing counsel. He does not hint that he ever even called. That, of course, means there has not been compliance with Local Rule 37.2"); *Jackson-El v. City of Markham*, 332 F.R.D. 583, 584 (N.D. Ill. 2019)("Letters and emails are easily and unfortunately too often ignored."); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2018 WL 505089, at *2 (N.D. Ill.

---

[1] The defense counsel's version is a good deal longer and more complex than the plaintiff's and paints a very different view of what occurred at the call. It is difficult, if not impossible, to determine which rendition is more accurate. Numerous questions and objections spring to mind regarding the differing versions of events. What is undeniable is that their respective versions occupy an inordinate amount of space in the briefs. [*Compare* Dkt. #59 at 3 with Dkt. #62 at 2-4]. But that so simple an incident should have taken up so much briefing is unfathomable. But not being involved in the disputed event, the inherent limitations on judicial time that can be devoted to issues like this in a case preclude attempts to try and answer every disputed event.

2018)("Local Rule 37.2 requires an in-person or telephonic meet and confer and cannot be satisfied by the exchange of emails."); *Geraci v. Andrews*, 2017 WL 1822290, at *1 (N.D. Ill. 2017) ("Local Rule 37.2 makes it plain that letters and emails don't count, and with good reason."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("The command in the rule could not be more explicit. Emails and letters are not enough under Rule 37.2.").

As for the disputes the parties have been unable to resolve, resolution of discovery disputes is committed to the court's broad discretion. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013); Rule 16(c)(2)(F). Consequently, it behooves counsel to work things out on their own where possible. A compromise is often preferable to the option of seeking a decision by the court. That is because discretion denotes the absence of hard and fast rules. *Langnes v. Green*, 282 U.S. 531, 541 (1931). Being a range, not a point, discretion allows two decision-makers—on virtually identical facts—to arrive at opposite conclusions, either of which will be deemed to constitute appropriate exercises of discretion. *See McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County, Ill*., 650 F.3d 631, 635 (7th Cir. 2011). *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). A party who steadfastly maintains his position without budging could be "right," but find itself on the losing side when the matter is left to the court, and the court's "discretion" leads it to accept the other side's position – which, by definition, is the correct one.

And while the loser always has theoretical recourse for review by the district court, it is often insufficient and, in a sense, illusory. Indeed, a *successful* "appeal" to the district court of a magistrate judge's resolution of a discovery dispute is rare – involving as it does an "abuse of discretion"

standard. Rule 72(a), Federal Rules of Civil Procedure. An abuse of discretion occurs when no reasonable person could take the view of the district court. *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005). *See also United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."); *Elliot v. Mission Trust Services, LLC*, 2015 WL 1567901, 4 (N.D. Ill. 2015). And even when the "clearly erroneous" standard of review is involved, an applicant for review will find that he often has an uphill battle. Indeed, the Seventh Circuit has gone so far as to say that a decision is only clearly erroneous if "it strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish." *Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). *See also Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)("The clear error standard means that the district court can overturn the magistrate judge's ruling only if [it] is left with the definite and firm conviction that a mistake has been made."). Is a discovery response adequate? Is a request overly broad? One judge will say yes, another will say no, and both may be affirmed on appeal so long as a discretionary call was involved. In short, a losing party in a discovery dispute that has been resolved by the magistrate judge often will have little meaningful recourse.

**B.**

The first problem plaintiff raises in its Motion is the claim that it "served its Interrogatories and Document Requests on all six individual Defendants." But it did so in a single service, collectively made on counsel for five of the defendants: Aixin Li, Brian Benson, Danny Lu, Kevin Lu, Xia Lu. [Dkt. #62-7; #14]. Defendants provided a single categorical response in response to Vera Bradley's Interrogatories "to the extent [they are] directed toward more than one person" and replied that "Kevin Lu will provide answers to the best of his knowledge and belief, and

insofar as his understanding is as to the other co-defendants." The remaining defendants did not provide any responses, and none of the defendants have produced any documents. [Dkt. #59, at 7-8]. So the upshot seems to be that the defendants do not want to answer through that one service, which they apparently claimed was insufficient, demanding instead that each of them be separately served even though one attorney represents the five, and all of the services and requests appear to have been identical. Apparently, that's what plaintiff would have done, and that is what plaintiff is apparently insisting on. But, instead of simply serving each defendant individually, plaintiff's counsel has filed a motion, two 14-page briefs, and 150 pages of exhibits. But this is taking time away from what is the real dispute and from other cases waiting in the judicial queue for attention – a course that has been criticized by the Seventh Circuit. *See, e.g., Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 329 (7th Cir.1991).

But defense counsel has also elevated form over substance. It should have been clear that he and his clients would have to get on with discovery and respond to what had already been served. Unable to compromise on this issue it has been left to the court to resolve the dispute. Thus, the plaintiff is ordered to serve its requests on each defendant individually – assuming they ask for different things from each person – and defendants are ordered to respond individually to the requests within 14 days of service. No additional time should be necessary as they and their counsel have been aware of the requests for months.

As it stands, then, the only responses have been from defendant, Kevin Lu. But, in the main, those responses have been the typical "boilerplate" objections that all too often are thoughtlessly and reflexively provided as the "answers" to discovery requests. The rote, unamplified recitals often provided are: "unduly burdensome," "overbroad," "vague" or "vague and ambiguous." But how

5

is "customer" vague? Or "source"? These terms are clear even to the uninitiated. Not surprisingly then, court after court has rejected these unadorned boilerplate "objections" as tantamount to no objections at all. *See, e.g., Zambrano v. Sparkplug Capital, LLC*, 2020 WL 1847396, at *1 (N.D. Ill. 2020); *Gevas v. Dunlop*, 2020 WL 814875, at *1 (N.D. Ill. 2020); *Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1, Pension Tr. Fund*, 2019 WL 454324, at *4 (N.D. Ill. 2019) *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. 2017); *Kaufman v. Am. Express Travel Related Servs. Co., Inc*., 2011 WL 13262362, at *3 (N.D. Ill. 2011). Objections like these are little more than a tactic to obfuscate and delay.

Then there is the rote objection, the request is "outside the scope of proper discovery." It too is meaningless. As in all contexts, merely "saying so doesn't make it so." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010).

The problem here seems to be that when plaintiff asks for information or documents about defendants' sales or sources of Vera Bradley products, defendants refuse to respond, explaining:

> [t]he only products 'at issue' in this case are counterfeit products, not all 'Vera Bradley-labeled products;' the interrogatory is not limited to counterfeit products, nor has Vera Bradley even identified a single product sold by any Defendant, let alone a product sold within the statute of limitations that is counterfeit.

[Interr. Ans. Nos. 3-13 and Doc. Req. Nos. 1-2, 4-17, 20-24]. So, apparently, when the chicken farmer asks the proverbial fox where he got all those chickens, it is sufficient for the attorney simply to say "none of your business, because the fox didn't steal any of them." Perhaps that is true. Perhaps not. But the fox doesn't get to give its side of the story and preclude any inquiry at all, thereby resolving – perhaps quite incorrectly – the whole inquiry. Where the fox got all those chickens from remains to be seen. But, under the Federal Rules of Civil Procedure, we don't simply

take the other side's word for it – whether made directly or through his lawyer who, after all, only knows what he has been told. The hypothetical farmer and the court get to check to see where all those chickens came from. If the Rule were otherwise, discovery would be a hollow and pointless exercise. *See, e.g., United States v. Proctor & Gamble*, 356 U.S. 677, 682-83 (1958); *Lancelot Investors Fund L.P. v. TSM Holdings, Ltd.*, 2008 WL 1883435, 3-4 (N.D.Ill. 2008). The Complaint has identified more than an adequate number of counterfeit products purportedly sold under defendants' online seller accounts to provide a basis for these interrogatories and documents requests. [Complaint, Pars. 13-17].

Defendants have also filed a number of counterclaims, [Dkt. #42, at 34-38], and plaintiff, understandably, wants to know – and is entitled to know – the bases of those counterclaims. To that end, plaintiff has posed interrogatories and document requests like, "Describe in detail the factual basis for each of Defendants' Counterclaims." The typical boilerplate answer from defendants has been the uninformative: "Defendants object to the interrogatory to the extent it is premature or requests information outside Defendants' knowledge and control. Discovery has only just commenced, and Defendants have not assessed what knowledge third party witnesses or the other parties possess on which they may rely in asserting their counterclaims." [Interr. Ans. No. 16-17; Ex. F at 16, Doc. Req. Nos. 18-19].

That response is an evasion, not a recognized answer. The defendants had to have had some basis for their claims. If they did not, various sanctions could be imposed and ultimately Rule 11 may have been implicated. The interrogatory does not ask what others may have known, only what is known to the author of the counterclaims. The Rules of Civil Procedure require that attorneys certify "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable

7

under the circumstances" that their filings have adequate foundation in fact and law and were not filed for an "improper purpose." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020). Accordingly, at this juncture, defendants are presumed to have *some* facts and information that prompted their counterclaims and affirmative defenses, and defendants must provide those facts and information in discovery. It cannot be too often emphasized that allegations under our system of discovery created by the Congress do not carry the weight of an encyclical. They are not assumed to be true, and are not immune from inquiry by the person against whom allegations are leveled. After all, "[t]alk is cheap...." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1069 (7th Cir. 2020). The Rules even require supplementation in the event more facts come into a party's possession. The defense objections are baseless, and the request for information must be answered within 14 days.

      Finally, as to document production, as explained earlier, a court overseeing discovery cannot be sure what has been produced. Reliance must be had on what is relayed by opposing counsel and the opposing party. It would appear that, as of the date plaintiff filed its reply brief, defendants had produced one recently created document, consisting of screenshots of documents produced by plaintiff in discovery, a list of defendants' online seller account usernames that was compiled from defendants' "best recollection," and three other documents that were apparently downloaded from poshmark.com and tradesy.com. Beyond that, defendants have designated documents plaintiff produced that it got from ebay, poshmark, and Mercari as responsive to their offering or sale of products. With regard to defendants 'customer information,' defendants claim they do not maintain customer records and designate documents plaintiff received provided by ebay, poshmark, and Mercari as responsive. And defendants assert that plaintiffs already have plenty of

evidence in their possession. But that is an unavailing and improper objection. It is not for an opposing attorney to conclude that discovery is sufficient, and that no more should be provided. Were that a legitimate objection, discovery, apart from being a matter for the court, not for counsel, Rule 16(c)(2)(F), Federal Rules of Civil Procedure, would make one's opponent the final arbiter regarding discovery obligations. Of course that is not how discovery works. In short, the claim being advanced by the defendants is not a basis for ignoring discovery obligations. *See, e.g., Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 2015 WL 7293510, at *5 (N.D. Ill. 2015)("But [a discovery proponent's] possession of medical records does not necessarily bar or render superfluous additional discovery to further develop its defense."); *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010)(a party is not precluded from "seeking additional materials should discovery suggest they are probative of a claim or defense.").

It is worth focusing on that catalog of defendants' discovery production for a moment: they have produced only four or five documents. [Dkt. #62, at 5; #64, at 8]. That alone would be astounding in any case. Here, the Complaint is 28 pages and 113 paragraphs long. It asserts six federal and state law claims against 7 separate defendants. Those defendants, whether they have violated any laws or not, sell their wares over multiple internet platforms, and obtain those wares from multiple sources, some as far-flung as China. And those defendants have asserted 10 affirmative defenses and brought a 4-count, 25-paragraph counterclaim against the plaintiff. And yet, we are asked to conclude that the only appropriate discovery in the case is a small handful of documents. That ill accords with common sense and experience, which invariably have a role to play in any case. *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Montoya De Hernandez*, 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.* 975 F.2d 22, 26 (1st Cir. 1992)(Breyer, C.J.);

Posner, How Judges Think, 116 (Harv.Univ.Press 2008). *See generally* Holmes, The Common Law, 1 (Howe ed. 1963) ("The life of the law has not been logic; it has been experience."). No reasonable person could conclude that the defendants' minuscule discovery here is sufficient to satisfy the plaintiff's legitimate and reasonable discovery requests.

It certainly seems unlikely that defendants do not have sales or customer records, but the defendants claim that "[t]o the extent Defendants have any information or documents about the accused sales, they have produced it. The fact is that Defendants have little information or documents." They further claim that plaintiff had their internet platform accounts terminated, rendering defendants unable to obtain information from them. [Dkt. #62, at 11]. That explanation or accusation prompted a breathless reply from plaintiff, along with an affidavit, which claims that, essentially, plaintiff complained, the platforms looked into it, sided with plaintiff, and shut the accounts down. Then, defendants go into an argument that is out of place in a discovery dispute and suited instead to a motion for summary judgment. [Dkt. #62, at 11-13]. The plaintiff's claims against the defendants stand, and defendants have not challenged them with a summary judgment motion. Perhaps because, given their scant document production, they truly have no evidence to support their defenses or counterclaims. [That is not for us to say, and we intimate no opinion on that score]. Nevertheless, their unsupported substantive arguments do not amount to valid objections to discovery requests. Whether plaintiff's allegations will stand up to scrutiny as the case moves to more substantive matters is a matter for another time and another decision-maker.

Defense counsel insists the "Defendants are not withholding anything," and "they confirm [production] is complete after conducting searches," and cites Exhibit 8 to defendants' response brief. [Dkt. #62, at 13]. But that is the affidavit of a single defendant, Kevin Lu, and he affirms only

that "[t]he . . . Defendants have produced all documents *they agreed* to produce." [Dkt. #62-8](emphasis supplied). That statement is obviously unacceptable to resolve the present dispute, and does not accord with the discovery provisions of the Federal Rules of Civil Procedure. If the Rules were otherwise, they would have no meaning. The Rules are neither defined nor limited by a party's willingness to produce those documents he *agreed* to produce. Indeed, the claimed willingness to produce what was agreed would be produced is, at best, illusory. Phrased differently, this case is not about documents a party may have *agreed* to produce; it is about all responsive documents in the defendants' possession that are relevant and proportional to the claims made by the parties seeking discovery. If there are no responsive documents, each defendant must affirm that they conducted a thorough search for the defined documents, but found none. *See, e.g., Flentye v. Kathrein*, 2007 WL 2903128, at *2 (N.D. Ill. 2007)("[i]n the exceedingly unlikely event that there are no further responsive documents called for by the discovery requests beyond those provided in the Rule 26 disclosures, the plaintiffs must say so unambiguously in their responses."). There are significant consequences under the Federal Rules of Civil Procedure for discovery noncompliance. Counsel and the parties should not forget Learned Hand's timeless warning, "[j]ustice is not a game...." *United States v. Paglia*, 190 F.2d 445, 447-48 (2nd Cir. 1951).

      Given the way in which the case began, coupled with the failure to comply with Local Rule 37.2, there will be no award of fees at this time and in connection with the present motion. Should there be future discovery disputes, the parties are ordered to comply with the dictates of not only Local Rule 37.2, but also with the requirements set out in *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc*., 2007 WL 2713352 (N.D. Ill. 2007)(motion must contain a detailed, joint statement of the parties' efforts to resolve their disputes over each of the document requests at

issue, along with their final positions, supported by pertinent authority, on each request that remains in dispute).

While discovery may be the "bane of modern litigation," *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000), discovery is today recognized as essential to our system of litigation, and thus requires that the Federal Rules of Civil Procedure be followed. Thus, the defendants are ordered to comply with the foregoing conclusions in fourteen days once plaintiff follows through and serves requests on the defendants through the single counsel who is apparently representing all of them. Separate service to each named defendant ensures that there will be no mistake regarding the requests made to each defendant.[2] And while this court always stands ready to help resolve discovery disputes, counsel should consider the salutary purposes which Local Rule 37.2 seeks to achieve. The plaintiff's motion [Dkt. # 55] is granted in part and denied in part as discussed above.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/1/21

---

[2] Assuming there is one lawyer representing all of the defendants and that the requests are identical, it would certainly seem a needless elevation of form over substance to require that each person be served separately. But perhaps the requests are not identical, in which event there should be multiple services even though one lawyer is representing all the defendants. Multiple services ensures there can be no mistake. Still, the threshold issue which has caused the parties such anguish seems like something that could easily have been worked out by counsel before service was effectuated on the defendants' single lawyer.