## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| VERA BRADLEY DESIGNS, INC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2550 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| AIXIN LI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

On February 12, 2021, the defendants filed a sweeping Motion to Compel which complained about 50-plus alleged discovery deficiencies in the plaintiff's answers to interrogatories and document production. [Dkt. #67].[1]

---

[1] The parties claim they met and conferred four times over these issues, presumably *in good faith*, although the plaintiff claims there was no conferral regarding its privilege log. Obviously, the fact that dozens of disputes remain after those meeting makes the parties' claims of compliance with all aspects of the Rule suspect. *See Akiane LLC. v. Art & SoulWorks LLC*, 2020 WL 5604064, at *1 (N.D. Ill. 2020)(size of dispute brought to the court is evidence of parties' failure to confer in good faith); *Infowhyse GmbH v. Fleetwood Grp*., No. 15 CV 11229, 2016 WL 4063168, at *1 (N.D. Ill. July 29, 2016)("fact that dispute engendered 500 pages of briefs and exhibits shows parties didn't come close to complying with Local Rule 37.2). The parties' failure to negotiate a resolution of disputes necessarily commits those disputes to the broad discretion the court has over discovery matters. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). An abuse of discretion occurs when no reasonable person could take the view of the district court. *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005).

That means there are no hard and fast rules in discovery matters. Indeed, two decision-makers—on virtually identical facts—can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *See McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable...."); *Elliot v. Mission Trust Services, LLC*, 2015 WL 1567901, 4 (N.D. Ill. 2015). As a result, a party that obdurately maintains its position without budging could insist that it was "right," but find itself on the losing side when the matter comes before the court, and the court's vast discretion in overseeing discovery leads it to accept the other side's "right" position. Is a response adequate?
(continued...)

The defendants' motion was filed four days *after* the close of discovery. [Dkt. # 45 ("Fact discovery to be completed by 2/8/2021.")]. As such, it could have been denied as untimely. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir.2001)(district court did not abuse its discretion in denying motion to compel filed after discovery had closed and motion for summary judgment already had been filed); *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1056–57 (7th Cir.2000)(district court did not abuse its discretion in denying request for additional discovery after discovery had closed and response to motion for summary judgment was due). But, oddly enough, a week after discovery had closed, the *plaintiff* effectively came to the defendants' rescue and requested a reopening of discovery for an additional 60 days – at a status hearing that defense counsel did not attend [Dkt. #71].

## A.

This is another in a long line of garden-variety, trademark-infringement-over-the-internet cases. Such cases have become so numerous that they should by now be deemed routine and should not involve disputes over basic discovery issues. Unfortunately, that has seldom been the case. A sampling of the parties' problems in this case were detailed, very superficially, in the order on *plaintiff's* sweeping motion to compel on March 1st. [Dkt. #78]. Those problems continue, on both sides, as the tone of defendants' motion attests:

> This Motion should not be necessary; however, Vera Bradley is not cooperating in discovery. It is refusing to provide the most basic information about its claims, such as what it is that makes the accused product counterfeit or what damages it claims. To obstruct discovery, it has continuously made the same egregiously improper,

---

[1](...continued)

One judge will say yes, another will say no. The losing party will have little practical recourse, *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005); *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc*., 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018). Thus, it generally behooves parties to work out their issues with some give an take.

> boilerplate, and ill-founded objections. Defendants bring this Motion reluctantly, but
> they have no choice as they must defend themselves.

[Dkt. #69, at 2-3]. Things are clearly unpleasant. But, the highlight of this particular edition of the parties' difficulties, however, is that counsel *cannot agree on whether the plaintiff verified its interrogatory answers*. That sums everything up about where this case is at.

The defendants' motion is, as already stated, a sweeping indictment of the plaintiff's alleged performance in discovery. But it is rather sketchy; while the Motion raises perhaps a dozen issues over its fifteen pages, it is remarkable for the fact that it cites just two cases, which deal with just two of the issues defendants raise: boilerplate objections and the limit on number of interrogatories. [Dkt. #69, at 3, 5]. None of defendants' other arguments in its opening brief are meaningfully developed or supported by citation to caselaw; there is not a single case cited in defendants' reply brief. As the Seventh Circuit has said time and again, "[w]e repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ...." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). *Accord Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 (7th Cir. 2020).

**B.**

Defendants begin by making a broadbrush challenge to the boilerplate objections plaintiff lodged against many, or most, of defendants' interrogatories and requests for production. The defendants list eleven interrogatories (Nos. 1-7, 9-12) and a staggering forty requests for production (Nos. 1-15, 17-25, 28, 30, 32, 34, 36-44, and 46-48) as those they have issues with. As all the courts have said over and over, boilerplate objections are, essentially, nothing more than autonomic responses from attorneys and are ineffective. *See, e.g., Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996). *See also* cases collected in *Steed v. EverHome Mortgage Co.*, 308

3

F.Appx 364, 371 (11th Cir. 2009); *Saleh v. Pfister*, 2020 WL 4365641, at *1 (N.D. Ill. 2020); *Gevas v. Dunlop*, 2020 WL 814875, at *3 (N.D. Ill. 2020); *Williams v. Biomet, Inc*., 2019 WL 6117594, at *2 (N.D. Ind. 2019); *Belcastro v. United Airlines*, Inc., 2019 WL 1651709, at *11 (N.D. Ill. 2019); *Gunn v. Stevens Security & Training Servs., Inc*., 2018 WL 1737518, at *2 (N.D. Ill. 2018); *Kelley v. Board of Ed.*, 2012 WL 1108135, *2-3 (N.D. Ill. 2012). Thus, it is insufficient simply to say that something is "overbroad," "unduly burdensome," or "vague."

Without amplification as to *why* a question might be overbroad or why a document request might be unduly burdensome, the unexplained "objection" is meaningless. All discovery is burdensome and very little of it turns out to be of any significance if and when the parties finally make their way to the issues of the case. But, just because boilerplate objections have a long history does not mean that the continued warnings and holdings of all the courts are to be ignored.

While defendants list 50 offending responses, they specify one, plaintiff's response to Interrogatory No. 1, as an example of all plaintiff's responses. The interrogatory asks a fairly unsurprising, relevant question:

> INTERROGATORY NO. 1: For each person or entity that has knowledge of any facts upon which you rely on asserting your claims, identify the person (as defined above) and state such facts.

[Dkt. #69, at 3]. Plaintiff has made a couple of editions of its responses over the course of a couple of months, but each time the paragraph of objections was included. The most recent was plaintiff's second set of answers from February 5th:

> In addition to its general objections, Vera Bradley specifically objects to this request as overbroad and unduly burdensome because it requires Vera Bradley to identify each and every fact that supports, undermines, and/or relates to each allegation in the Complaint. This request is also overbroad and unduly burdensome because it requires Vera Bradley to identify each and every person with knowledge of every fact that supports, undermines, and/or relates to each allegation in the

4

> Complaint. This request is not proportional to the needs of this case. Vera Bradley also objects to this request as premature and compound because discovery is ongoing and because the request contains multiple subparts, which could be counted as separate interrogatories. Vera Bradley further objects to this request to the extent it seeks the production of information under the attorney-client privilege or work-product protection.

[Dkt. #67-6, at 4]. That, unfortunately, is a fairly typical discovery response that is seen all too often. But think about it, and think about how we all, lawyers and judges, recite and read these types of objections without thought. We are all numb to them.

For example, how is it *unduly* burdensome for a plaintiff to identify those who have knowledge about the case *that the plaintiff filed*? It is certainly not self-evident. Without an explanation it is a meaningless objection tantamount to no objection at all. Not surprisingly then, court after court has rejected these unadorned boilerplate "objections" as tantamount to no objections at all. *See, supra. See, e.g., Vera Bradley Designs, Inc. v. Aixin li*, 2021 WL 780718, at *3 (N.D. Ill. 2021)(collecting cases). But most importantly, those making such an objection are ignoring the Federal Rules of Civil Procedure. Fed.R.Civ.p. 26(a)(1)(I) *requires* parties to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." By refusing to do this because it is purportedly too much work, plaintiff is violating the Federal Rules.

Here is another example of an objection that is consistently made, but which falls apart under the slightest scrutiny. The plaintiff complains that the "request [i]s premature . . . because discovery is ongoing . . . ." But plaintiff said that on February 5, 2021. [Dkt. #67-6, at 4]. That was just *three days* before discovery was set to close. Premature? Discovery is ongoing? One

wonders how much additional discovery work plaintiff did on 6th and 7th of February.

One can go on. Perhaps the most interesting objection the plaintiff lodges in it lengthy list is that the discovery sought is not "proportional" to the needs of the case. *See* Fed.R.Civ.P. 26(b)(1). As with all plaintiff's objections, no explanation is given. The no doubt unintended implication seems to be that the plaintiff doesn't think its fourteen Flutterby-Hipster and Mickey Mouse handbags [Dkt. #67-6, at 7-8] are worth all this trouble, work, and expense. But proportionality is not a self-defining or self-authenticating objection. Proportionality, standing alone, is itself a kind of boilerplate objection.

But the defendants aren't wearing white hats in this discovery shootout. Their motion, for example, fails to inform the court that plaintiff *did* provide a response to the interrogatory naming, over the course of two responses: Colleen Blankenship, IP & Brand Protection Specialist; Kelli Thornson, Director, Product Development; Katherine Kovac, Print Design & Technology Manager; Amanda Campbell, Product Development Manager; and Alma Parra, Assistant Product Developer. Plaintiff does fail to provide any inkling into the facts, or categories of facts, these individuals might know. It must provide those, at least in summary fashion. And, if it is withholding any additional information, it must explain the basis for withholding that information beyond the unadorned objections it has lodged. That should be done with every response at issue in which plaintiff has raised these types of boilerplate objections.

## C.

The next complaint in defendants' catalog deals with plaintiff's objections to Interrogatories Nos. 7, and 11-14. Because they include multiple subparts, plaintiff complains that the total number of interrogatories defendants pose violates Fed.R.Civ.P. 33(a)(1). According to the defendants,

however, "even if subparts are counted (and they should not be) there are not more than 25 interrogatories." [Dkt. #69, at5]. Defendants' position makes no sense. Defendants posed fourteen numbered interrogatories. No. 7 has nine 9 parts, No. 11 has two, and No. 12 has six, which comes to 14 additional interrogatories for a total of 28. That's before factoring in that 14 products are at issue. Defendants also claim that the subparts should not be counted separately because they are devoted to single sets of information. *See Hangzhou Aoshuang E-Commerce Co. v. 008fashion*, 2020 WL 3429735, at *2 (N.D. Ill. 2020); Fed.R.Civ.P. 33(a)(1), Advisory Committee Notes, 146 F.R.D. 401, 676 (1993)("Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects."); Wright & Miller, Federal Practice and Procedure, §2168.1("[A]n interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question," whereas "an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation."). But defendants fail to explain how the identity of each defendant who sold a product is the same set of information as, say, the plaintiff's profit margin for a product or the facts that show it was counterfeit. *Cf. Jacks v. Directsat USA, LLC*, 2011 WL 382858, at *2 (N.D. Ill. 2011). This portion of defendants' motion is denied.

### D.

Inexplicably, the next dispute concerns whether plaintiff served its supplemental interrogatory answers that do not include an oath or verification by an officer or agent as required by Fed.R.Civ.P. 33(b)(1)(B). *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at *3 (N.D. Ill. Apr. 17, 2019). Defendants argue plaintiff has not complied with the basic Rules, and that the copies of plaintiff's answers contain only the signature of plaintiff's attorney. *Villareal*

*v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010)(Under Rule 33, answers to interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney). Plaintiff claims it complied, and has filed the affidavit of Colleen Blankenship, who swears that she signed verifications of the answers as agent for plaintiff on November 2, 2020, and February 8, 2021. [Dkt. #80]. But, as plaintiff includes no copies of those verifications as a supporting exhibit, the court is forced to order the plaintiff to comply with Fed.R.Civ.P. 33(b)(1)(B) and this part of defendants' motion is granted.

**E.**

Next, the defendants note that because plaintiff objected to Requests for Production Nos. 1-23, 27-33, 36-39, 46-48, it cannot be sure whether documents were withheld on the basis of plaintiff's objections. Plaintiff claims in its response brief that it has not withheld any documents on any basis other than attorney-client privilege [Dkt. # 79, at 5]. But, that is not indicated in their responses to discovery, and so, this portion of defendants' motion is granted, and plaintiff is ordered to serve supplemental responses to requests for production that state, for each response asserting an objection, whether any responsive materials are being withheld on the basis of the objection.

**F.**

Defendants have additional issues with plaintiff's answers to Interrogatories Nos. 1, 7, and 8. Plaintiff was ordered to respond more completely to No. 1 above, so Nos. 7 and 8 remain. No.7 is one of the multi-part Interrogatories that defendant has failed to show center on a single theme; however, the court, exercising its broad discretion, finds that the plaintiff has already provided adequate responses to part a, b, f, g, h, and I. But plaintiff is ordered to fully respond to part e. Discovery is no longer "ongoing," and was nearly over when plaintiff lodged its unpersuasive

objection. As for No.8, plaintiff has identified over 500 hundred responsive documents. That is adequate.

## G

Of course, there are quibbles over document requests as well. Request 23 seeks: "All documents describing or discussing how you determine whether a product is allegedly counterfeit." Defendants complain that plaintiff produced some documents, but it objected to others on the basis of attorney-client privilege or work product privilege. Plaintiff's version is that it produced notes from its inspection of the fourteen sample purchases, including photographs identifying specific structural and pattern flaws. [Dkt. #79, at 13; #80, at ¶ 8]. It also provided the names of the individuals who conducted those inspections in response to Interrogatory No. 1 on February 5, 2021. [Dkt. #79, at 13]. I find that this is adequate and this portion of defendants' motion is denied.

Request No. 38[2] seeks "All of your documents bearing the name of, or referring to, any of the Defendants." For once, the court agrees that this request is over broad, unduly burdensome and likely to target many irrelevant documents. Accordingly, this portion defendants' motion is denied.

## H.

Finally, defendants have issues with the plaintiff's privilege log. Defendants challenge plaintiff's claim of privilege for the documents for which an attorney was not listed in the "To" or "From" column, specifically: Nos. 2, 7, 9, 12-14, 16-17, 24-26, 28-42, 46-47, 50, 56, 88, 91, 93-95, 98, 103-108, 110-12, 114-116, 118-126. But as defendants go into their specific complaints, the argument appears to make no sense. The defendants cite, as examples of offending log entries, Nos.

---

[2] Defendants withdrew their motion as to Request No. 33, which they misidentified as Request no. 31, in their reply brief. [Dkt. #81, at 9].

6 and 7. But No. 6 clearly lists an attorney as a recipient, as defendant concedes. And No. 7 clearly indicates that while it was created by plaintiff as part of its investigation of the authenticity of defendants' handbags, it was provided to counsel in anticipation of litigation. [Dkt. #69, at 13-14]. As such, the claim of work product appears viable. It would seem that defendants' brief confuses attorney-client privilege with work product, citing cases indicating that passing a document to an attorney does not cloak it with the privilege. [Dkt. #69, at 14-15]. But, it would seem from plaintiff's privilege log, the plaintiff is not claiming privilege for the attachment, but work product. *See, e.g., United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1974)(the work product doctrine is "distinct from and broader than the attorney-client."); *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir. 1980)("Although only confidential communications between the attorney and client are protected by the attorney-client privilege, the work product doctrine may encompass any document prepared in anticipation of litigation by or for the attorney.").

At least that's what one thinks until one reads plaintiff's response brief. It is then that defendant' confusion becomes understandable. Remarkably, plaintiff explains that its privilege log lists documents for which it is not claiming privilege – or work product – and which it has already produced:

> [Plaintiff] has produced all attachments listed on [plaintiff's] Privilege Log that are not otherwise privileged as a stand-alone document. The Privilege Log is constructed to keep attachments associated with privileged communications together so it is clear what attachments were sent with the privileged communication. It does not mean that the attachment is thereby privileged. For example, entries 102 through 126 on the Privilege Log refer to four separate privileged emails and a large number of attachments described, in part, as "copyright deposit copies." (ECF 8-9) These attachments are the deposit copies of fabric patterns that [plaintiff] filed with the Copyright Office. [Plaintiff] produced all of these attachments to Defendants as stand-alone documents in this litigation months ago. The same is true for all of the

attachments listed in the Privilege log. [Plaintiff] did not withhold production of attachments to emails simply because they may have been sent "to" or "from" inside or outside counsel. Counsel for [plaintiff] reviewed each individual attachment and those that are not privileged in and of themselves were produced.

[Dkt. #79, at 14-15].

The only way to interpret this is that, until recently, the plaintiff withheld documents and claimed they were privileged or protected by work product in their privilege log and only thereafter "reviewed each individual attachment" and produced non-privileged documents. That's unacceptable. It is a violation of Fed.R.Civ.P. 26(b)(5)(A). Not surprisingly, the plaintiff cites no case law in support of its rather bizarre take on Fed.R.Civ.P. 26(b)(5)(A) and privilege logs in general. Again, ". . . perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ...." *Berkowitz*, 927 F.2d at 1384; *Williams*, 982 F.3d at 511.

As the plaintiffs appear to concede that they have withheld, at least for a time, documents based on claims of privilege that had no basis, how can one believe that the documents they continue to withhold are being withheld based on *valid* claims or privilege or work product? Really, plaintiff ought to be found to have waived the privilege and work product protection as to all documents in its log. But, given the hoary nature of evidentiary privileges, courts have been hesitant to find such sweeping waivers, however inartfully a privilege log has been put together. *See, e.g., Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 623 (7th Cir. 2010); *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 157 (N.D. Ill. 2020) *Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *5 (N.D. Ill. 2019)(collecting cases); *Monco v. Zoltek Corp.*, 317 F. Supp. 3d 995, 1000 (N.D. Ill. 2018)(collecting cases). We will stop short of that here, but will order production of all documents we find to be inadequately described to support any claim of work product.

11

The work-product privilege protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case. *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). If it has not already done so, the plaintiff is ordered to produce all the documents listed in the privilege log that have no author or recipient, and documents described as notes protected by work product that were not authored by an attorney or described as provided to counsel as part of preparation for litigation at counsel's direction: Nos. 2, 7, 9, 12, 13-14, 16-17, 24-26, 28-39, 40-42, 50, 88, 93-95, 103-108, 110-112, 114-116, 118-126. *See, e.g., Villas at Winding Ridge v. State Farm Fire & Cas. Ins. Co.*, 2018 WL 10246983, at *2 (S.D. Ind. 2018)("None of the emails represent work performed by or at the direction of attorneys, or convey an attorney's thought process or mental impressions.");*Meives v. Whelan & Assocs., Inc.*, 2018 WL 4283395, at *2 (S.D. Ind. 2018)("The lawyer's judgments dictate when steps are required to be taken in anticipation of litigation and what those steps should be. Other agents of a party may act out of general prudence or with watchful vigilance, but lawyers are entrusted with the task of anticipating and responding to litigation. . . documents created by a party's agent without attorney involvement ordinarily should not be granted work product protections."); *Hamdan v. Indiana Univ. Health N., LLC*, 2014 WL 2881551, at *6 (S.D. Ind. 2014)(emails are between non-attorney employees do not represent work performed by or at the direction of attorneys).

For the foregoing reasons, the defendants' motion to compel [Dkt. #67] is granted in part and denied in part.

ENTERED: _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 3/22/21

13